1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ALEXANDR MAYSTRENKO, et al.,

Plaintiffs,

v.

WELLS FARGO, N.A.,

Defendant.

Case No.  21-cv-00133-JD

**ORDER RE MOTION TO DISMISS**

Re: Dkt. No. 21

10

11

12

13

14

15

        Plaintiffs Alexandr Maystrenko and Ekaterina Maistrenko are Russian nationals living in California while their asylum applications are being reviewed.[1]  They say that defendant Wells Fargo denied them banking services, such as checking accounts and credit vehicles, based on a policy and practice of discriminating against non-United States citizens.  On behalf of themselves and a nationwide and California class of similarly situated individuals, plaintiffs allege that this violates 42 U.S.C. § 1981 and the California Unruh Civil Rights Act.  Dkt. No. 1.

16

17

18

        Wells Fargo has asked to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of standing, and under Rule 12(b)(6) for failure to state a plausible claim.  Dkt. No. 21.  The motion is denied on both grounds.

19

**BACKGROUND**

20

21

22

23

        As alleged in the complaint, Wells Fargo maintains policies that limit the availability of credit cards, checking accounts, and personal loans "to U.S. citizens or legal permanent residents." Dkt. No. 1 ¶ 31.  It is said to "categorically exclude" certain non-citizens from obtaining banking services.  *Id.* ¶ 30.

24

25

26

        On two occasions in 2020, Wells Fargo denied Ekaterina Maystrenko's online applications for a cash-back credit card.  *Id.* ¶ 6.  Wells Fargo sent a letter stating they were denied because she

27

28

_____

[1] Plaintiffs are married, *see* Dkt. No. 1 ¶ 4, but the complaint does not explain the spelling difference in their names.  For ease of reference, the Court refers to both as Maystrenko.

United States District Court
Northern District of California

1    was not "a permanent United States resident." *Id.*  Alexandr Maystrenko was denied a Wells

2    Fargo checking account and personal loan on the same grounds.  The letter explaining the denial

3    stated that "we cannot open accounts online for non-resident citizens aliens [sic]," but encouraged

4    Maystrenko "to apply in person [at] your local Wells Fargo branch." *Id.* ¶ 9.  The denial of the

5    personal loan stated: "[w]e're unable to accept applications for unsecured loans or lines of credit

6    from non-resident aliens." *Id.* ¶¶ 9, 10.

7        In plaintiffs' view, Wells Fargo's policies and practices amount to "unlawful alienage

8    discrimination in the making and enforcing of contracts in violation of 42 U.S.C. § 1981." *Id.*

9    ¶ 40.  Plaintiffs also say that the bank denies "full and equal accommodations, advantages,

10   facilities, privileges, services, and/or discounts" based on citizenship and immigration status in

11   violation of the Unruh Civil Rights Act. *Id.* ¶¶ 44-45, 53.

12       For the Rule 12(b)(1) motion, Wells Fargo says that Alexandr Maystrenko declined to

13   apply in person at a branch for a checking account, as the denial letter invited him to do, and so he

14   lacks an injury in fact sufficient to establish standing to sue under Article III of the United States

15   Constitution.  For the Rule 12(b)(6) motion, Wells Fargo contends that the complaint does not

16   plausibly allege any discrimination claims because Wells Fargo was within its rights to rely on

17   immigration status when extending credit or offering banking services.

18                                        **DISCUSSION**

19   **I.      RULE 12(B)(1) MOTION**

20       The standing challenge is directed solely to Alexandr Maystrenko's claim with respect to

21   the checking account application.  It does not challenge his standing to sue for the denial of other

22   services, or Ekaterina Maystrenko's standing to sue in any capacity.  *See* Dkt. No. 21 at 4-5.

23       Under Rule 12(b)(1), dismissal is appropriate if the court lacks subject matter jurisdiction.

24   Fed. R. Civ. P. 12(b)(1).  Federal courts are courts of limited jurisdiction, and the "case or

25   controversy" requirement of Article III of the U.S. Constitution "limits federal courts' subject

26   matter jurisdiction by requiring, inter alia, that plaintiffs have standing." *Chandler v. State Farm*

27   *Mut. Auto. Ins.*, 598 F.3d 1115, 1121 (9th Cir. 2010).  "[A] plaintiff must demonstrate standing to

28   sue by alleging the 'irreducible constitutional minimum' of (1) an 'injury in fact' (2) that is "fairly

*United States District Court*
*Northern District of California*

2

traceable to the challenged conduct of the defendants" and (3) "likely to be redressed by a favorable judicial decision." *Patel v. Facebook Inc.*, 290 F. Supp. 3d 948, 952 (N.D. Cal. 2018) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). The "specific element of injury in fact is satisfied when the plaintiff has suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* (internal quotations and citations omitted).

"A Rule 12(b)(1) jurisdictional attack may be facial or factual. In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citations omitted); *see also Patel*, 290 F. Supp. 3d at 951-52.

Wells Fargo challenges Maystrenko's standing to sue purely on the basis of the allegation in the complaint that he could apply in person for a checking account. Dkt. No. 21 at 4 (citing Complaint, Dkt. No. 1 ¶¶ 8-9). Consequently, it raises a facial attack on standing, for which the Court takes all factual allegations in the complaint as true, and draws all reasonable inferences in plaintiffs' favor. *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013).

Resolving the standing question is short work. Wells Fargo relies almost exclusively on *Chattopadhyay v. Simple Finance Technology Corp.*, No. 4:19-cv-1541-JST (N.D. Cal. Nov. 2, 2020) for the proposition that Maystrenko was not injured for standing purposes. *See* Dkt. No. 21 at 4-5. This decision was on appeal when the parties filed their motion papers, and the Court took the matter under submission pending the Ninth Circuit's disposition. *See* Dkt. No. 31. The results are now in, and the circuit court reversed *Chattopadhyay* on the standing point. In pertinent part, the circuit court concluded that Article III standing is established when a plaintiff alleges that a bank allows United States citizens to apply for accounts and services online, but requires non-citizens to appear in-person at a branch. *Chattopadhyay v. BBVA USA*, No. 21-15017, 2021 WL 4958850, at *1 (9th Cir. Oct. 26, 2021) (unpublished). "The fact that Plaintiffs would have

3

1    ultimately obtained the same checking account given to U.S. citizens does not vitiate the alleged

2    discriminatory injury." *Id.*

3          That is exactly the situation here with respect to Article III standing.  While it is true that

4    the circuit's disposition is an unpublished memorandum that does not carry precedential weight or

5    binding effect, *see Grimm v. City of Portland*, 971 F.3d 1060, 1066-67 (9th Cir. 2020), the same

6    can be said of the underlying district court decision on which Wells Fargo relies.  The reasoning

7    for the reversal of the district court's conclusions with respect to standing are directly on point,

8    and certainly qualify as instructive at the very least.  *See DeHoog v. Anheuser-Busch InBev*, 899

9    F.3d 758, 764 n.7 (9th Cir. 2018).  There is no good reason for reaching a different outcome in this

10   case, and Wells Fargo has not demonstrated otherwise.

11   **II.      RULE 12(B)(6) MOTION**

12         To meet the pleading requirements of Rule 8(a) and to survive a Rule 12(b)(6) motion to

13   dismiss, a claim must provide "a short and plain statement . . . showing that the pleader is entitled

14   to relief," Fed. R. Civ. P. 8(a)(2), including "enough facts to state a claim . . . that is plausible on

15   its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible on its face

16   if, accepting all factual allegations as true and construing them in the light most favorable to the

17   plaintiff, the Court can reasonably infer that the defendant is liable for the misconduct alleged.

18   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plausibility analysis is "context-specific" and not

19   only invites but "requires the reviewing court to draw on its judicial experience and common

20   sense." *Id.* at 679.

21         The Maystrenkos have plausibly alleged discrimination on the basis of alienage under

22   Section 1981, and on the basis of citizenship or immigration status under the Unruh Act.  To start,

23   Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the

24   same right" to "make and enforce contracts . . . as is enjoyed by white citizens."  42 U.S.C.

25   § 1981.  This right applies as much to alienage as it does to race.  *See Sagana v. Tenorio*, 384 F.3d

26   731, 738 (9th Cir. 2004), *as amended* (Oct. 18, 2004) ("Just as the word 'white' indicates that

27   § 1981 bars discrimination on the basis of race, the word 'citizen' attests that a person cannot face

28   disadvantage in the activities protected by § 1981 solely because of his or her alien status.").  The

United States District Court
Northern District of California

4

1    fact that Wells Fargo might have offered services to some aliens, as it suggests, *see* Dkt. No. 21 at

2    9-10, is not cause for dismissing the Maystrenkos' claim.  Discrimination "within the class of

3    aliens" is unlawful discrimination; the salient point is that a policy "is directed at aliens and that

4    only aliens are harmed by it." *Nyquist v. Mauclet*, 432 U.S. 1, 8-9 (1977); *see also Graham v.*

5    *Richardson*, 403 U.S. 365, 376 (1971) (striking down state welfare laws that restricted eligibility

6    to some aliens residing in the United States for a specified number of years).

7         The Maystrenkos have also plausibly alleged that alienage was the "but-for" cause of the

8    discrimination.  Under Section 1981, a plaintiff must plead that "but for" alienage, he or she

9    "would not have suffered the loss of a legally protected right."  *Comcast Corp. v. Nat'l Ass'n of*

10   *Afr. Am.-Owned Media*, 140 S.Ct. 1009, 1019 (2020).  The complaint satisfied this element by

11   alleging that Wells Fargo expressly denied their applications for banking services because they

12   were not United States citizens.  *See, e.g.,* Dkt. No. 1 ¶¶ 2, 6, 7, 30, 38, 45, 53.  This leaves no

13   doubt that alienage was adequately alleged as a but-for cause for purposes of Section 1981.  Wells

14   Fargo suggests it may have had non-discriminatory reasons for denying services to the

15   Maystrenkos, such as lack of creditworthiness, *see* Dkt. No. 21 at 5, but that is factual matter

16   outside the boundaries of a Rule 12(b)(6) motion.  The Maystrenkos plausibly alleged a claim for

17   alienage discrimination in the complaint, which is all that is needed at this stage of the case.  *See*

18   *Comcast*, 140 S.Ct. at 1019.

19        Wells Fargo's reliance on regulations implementing the Equal Credit Opportunity Act, 15

20   U.S.C. § 1691 *et seq.* (ECOA), is misdirected.  The ECOA prohibits discrimination in lending on

21   the basis of race, color, religion, national origin, and other grounds.  15 U.S.C. § 1691(a).  Wells

22   Fargo says that the ECOA implementing regulations permit lenders to take into account an

23   applicant's immigration status when deciding whether to extend credit, and to inquire about

24   permanent residency in connection with a credit transaction.  *See* Dkt. No. 21 at 9.  It also cites

25   *Vaughn v. City of New York*, No. 06-CV-6547 (ILG), 2010 WL 2076926, at *10, (E.D.N.Y. May

26   24, 2010), an unpublished summary judgment order from the Eastern District of New York, for

27   the proposition that discrimination on the basis of immigration status is not the same as on the

28

basis of alienage or citizenship, Dkt. No. 21 at 8, with the ostensible punchline that Wells Fargo acted lawfully.

The problem with these observations is that they are not germane to the Maystrenkos' claims. The gravamen of the complaint is that Wells Fargo had a policy and practice of denying banking services in whole or in part of the basis of alienage. *See, e.g.*, Dkt. No. 1 ¶¶ 2, 6, 7, 30, 38, 45, 53. To that point, the putative classes are defined as consisting of "non-United States citizens who resid[e] in the United States." *Id.* ¶ 25. Discrimination on the basis of alienage is the centerpiece of the Maystrenkos' claims. This is enough for the federal claim to go forward.

Dismissal of the Unruh Act claims is also not warranted. The Unruh Act guarantees "the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments," irrespective of citizenship or immigration status. Cal. Civ. Code § 51(b). Business establishments are prohibited from discriminating against, or refusing to contract with, any person on citizenship or immigration status grounds. Cal. Civ. Code § 51.5(a). The complaint plausibly alleges an Unruh Act claim for the same reasons discussed with respect to the Section 1981 claim.

Wells Fargo suggests that legitimate business reasons justified its alienage policies and practices, but these considerations generally apply only when an Unruh Act claim involves "a category not enumerated in the statute or added by prior judicial construction." *Koebke v. Bernardo Heights Country Club*, 36 Cal. 4th 824, 840 (2005). Here, citizenship and immigration status are enumerated in the Unruh Act. To the extent that Wells Fargo invokes "public policy" reasons for dismissal of the Unruh Act claims, it offers no policy that might reasonably embrace discrimination in banking services based on alienage.

## CONCLUSION

The motions to dismiss are denied.

**IT IS SO ORDERED.**

Dated: November 10, 2021

_____
JAMES DONATO
United States District Judge

United States District Court
Northern District of California